UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TONY LEROY VANDEE,

        Plaintiff,

v.

JAMES CORRIGAN, et al.,

        Defendants.

_____/

Case No. 2:22-cv-225

Hon. Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Corrigan. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.) Further, the Court will direct Plaintiff to file an amendment to his complaint within thirty (30) days that identifies at least one of the John/Jane Doe Defendants.

**Discussion**

I. **Motion to Appoint Counsel**

Plaintiff seeks the appointment of counsel in this case, stating that he is functionally illiterate and that he has been issued a special accommodation medical detail by the MDOC. (ECF No. 3, PageID.18.) Plaintiff suggests that he is unable to investigate "crucial facts" relevant to his claim. (*Id.*) Plaintiff has been assigned a "24hr. reading/writing assistant by the MDOC to help with everyday life functions with respect to reading, writing, and comprehension." (*Id.*) Plaintiff's motion suggests that his assistant has drafted the instant complaint for him. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel (ECF No. 3).

II. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF)

in Kincheloe, Chippewa County, Michigan. Plaintiff sues Warden James Corrigan and three unnamed correctional officers, referred to as John or Jane Does #1, #2, and #3.

Plaintiff alleges that on an unknown date in July of 2022, he was playing video games on his electronic device in the dayroom for Unit E. (ECF No. 1, PageID.4–5.) Plaintiff avers that the day room is adjacent to the officers' station and, therefore, in clear view of custody staff. (*Id.*, PageID.4.) Plaintiff asserts further that the dayroom is equipped with surveillance cameras that are monitored by staff in the facility's Control Center. (*Id.*)

While playing video games in the dayroom, Plaintiff was assaulted by another prisoner, who struck Plaintiff in the face with his fist. (*Id.*) Plaintiff's jaw was fractured, and he suffered a black eye. (*Id.*) Plaintiff alleges that Defendants John and Jane Doe #1 and #2, who were at the officers' station, did nothing to stop the assault. (*Id.*) He also contends that when he passed by the officers' station with blood streaming from his nose, Defendants John and Jane Doe #1 and #2 did not ask if he needed medical attention but "simply ignored him as if nothing had ever happened." (*Id.*) Plaintiff also alleges that Defendant John Doe #3, who was assigned to the Control Center on that date, did nothing to stop the assault, such as radioing for assistance. (*Id.*) Plaintiff states that an incident report was never prepared. (*Id.*) Moreover, the inmate who assaulted him was not removed from Unit E, but "remained a threat to Plaintiff for more tha[n] a week while daily breathing threats and intimidations to Plaintiff unencumbered." (*Id.*)

On July 11, 2022, Plaintiff was on the phone when Officer Dickinson (not a party) ordered him to take off his sunglasses while in the unit. (*Id.*, PageID.5.) Officer Dickinson noticed Plaintiff's swollen face and blood-shot eyes and asked what happened. (*Id.*) Plaintiff told Officer Dickinson that he had been elbowed in the face while playing basketball because he feared that the inmate who assaulted him would retaliate and harm him again. (*Id.*) Officer Dickinson told

3

Plaintiff that he "might as well tell her the truth because she was going to check the camera footage and find out what happened anyway." (*Id.*)

On July 12, 2022, Plaintiff was called to the medical department to have his injuries evaluated. (*Id.*) He was subsequently transported to a medical center in Sault Ste. Marie for further revaluation. (*Id.*) He told the transportation officer (not a party) that he had been struck in the face by another prisoner days earlier. (*Id.*) The doctor at the medical center told Plaintiff that the center was not equipped for the type of surgery he needed. (*Id.*) When Plaintiff returned to URF, "custody staff put him back into the same Unit with the same prisoner who had assaulted him in spite of knowing about the assault by this time." (*Id.*)

On July 13, 2022, Plaintiff was escorted to the acting inspector's office to be interviewed about the incident. (*Id.*) Plaintiff admitted that he had been assaulted by another prisoner. (*Id.*) Plaintiff was then placed in protective custody for his safety. (*Id.*) That same day, Plaintiff was transferred to MCF. (*Id.*, PageID.6.) On July 15, 2022, he was taken to Spectrum Health Hospital in Muskegon, Michigan, where he underwent "immediate oral surgery and received 12 plates in his face." (*Id.*)

Based on the foregoing, Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to protect him from assault and by demonstrating deliberate indifference to his medical needs. (*Id.*, PageID.7.) Plaintiff seeks $150,000.00 in compensatory and punitive damages from each Defendant. (*Id.*)

### III.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against Defendant Corrigan

Although Plaintiff specifically names Warden Corrigan as a Defendant, he does not make any factual allegations against Warden Corrigan. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that,

5

in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Warden Corrigan in the body of his complaint. His allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). For that reason alone, all claims against Defendant Corrigan are properly dismissed.

It is possible that Plaintiff named Warden Corrigan because of his supervisory position at URF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at

6

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

By failing to name Defendant Corrigan in the body of his complaint, Plaintiff fails to allege facts showing that Defendant Corrigan encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, he fails to allege any

7

facts at all about his conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Corrigan was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendant Corrigan are premised on nothing more than respondeat superior, Plaintiff fails to state a claim against him.

### B. Claims Against Defendants John Doe #1, Jane Doe #2, and John Doe #3

#### 1. Failure to Protect

Plaintiff contends that Defendants John Doe #1, Jane Doe #2, and John Doe #3 violated his Eighth Amendment rights by failing to protect him from the other prisoner's assault.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that the Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

As set forth above, Plaintiff alleges that the assault by the other prisoner occurred in full view of Defendants John Doe #1 and Jane Doe #2, who were at the officers' station next to the dayroom. (ECF No. 1, PageID.4.) Plaintiff also contends that John Doe #3 was able to view the assault from the Control Center via the surveillance cameras. (*Id.*) Plaintiff avers that despite this, none of the three Defendants did anything to intervene and stop the assault. Given these allegations, the Court concludes that Plaintiff has set forth plausible Eighth Amendment failure to protect claims against Defendants John Doe #1, Jane Doe #2, and John Doe #3.

### 2. Denial of Medical Care

Plaintiff also contends that Defendants John Doe #1 and Jane Doe #2 violated his Eighth Amendment rights by failing to obtain medical care for him after the assault. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a

9

failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)

(holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Plaintiff alleges that he suffered a broken jaw, a black eye, and that blood was streaming from his nose after the assault. Plaintiff, therefore, has sufficiently alleged serious medical needs. Plaintiff also contends that even though the assault occurred adjacent to the officers' station and that he walked by the station with blood streaming from his nose, Defendants John Doe #1 and Jane Doe #2 failed to obtain any medical assistance for him. Although Plaintiff has by no means proven deliberate indifference, at this stage of the proceedings, taking Plaintiff's allegations as true

11

and in the light most favorable to him, Plaintiff's Eighth Amendment claims premised upon the denial of medical attention immediately following the assault may not be dismissed on initial review.

## IV. Identification of the John and Jane Doe Defendants

The Court has determined that at this juncture, Plaintiff has set forth plausible Eighth Amendment claims against Defendants John Doe #1, Jane Doe #2, and John Doe #3. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. Fed. R. Civ. P. 10(a). The use of the fictitious names of Jane and John Doe is typically permitted only in limited circumstances, and only in the context where there is at least one named party and discovery from that party may eventually allow the true identity of the Jane or John Doe to be discovered. *See, e.g.*, *Berndt v. Tennessee*, 796 F.2d 879, 882–84 (6th Cir. 1986) (remanding to allow plaintiff to amend complaint to name the parties). As discussed *supra*, Plaintiff has failed to state a claim against Defendant Corrigan, and his dismissal leaves only unnamed Defendants in this matter.

Without sufficient information identifying at least one of the John/Jane Doe Defendants, the Court is unable to refer the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program or to order service by the United States Marshals Service. Accordingly, the Court will permit Plaintiff to file an amendment to his complaint, within thirty (30) days, to provide the name of at least one of the John/Jane Doe Defendants. Plaintiff is cautioned that if he fails to file an amendment to his complaint that identifies at least one of these individuals, he will face dismissal of his action without prejudice. *See Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997) (remanding to allow the plaintiff an opportunity to identify the name of an officer but noting that a dismissal was not precluded if the information was insufficient to allow for service of process on the defendant).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Corrigan will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

Although Plaintiff has set forth colorable Eighth Amendment claims against the John/Jane Doe Defendants at this time, the Court cannot proceed further without identifying information for at least one of these individuals. Accordingly, the Court will direct Plaintiff to file an amendment to his complaint within thirty (30) days that identifies at least one of these individuals.

An order consistent with this opinion will be entered.


Dated: December 21, 2022           /s/ Hala Y. Jarbou
                                   HALA Y. JARBOU
                                   CHIEF UNITED STATES DISTRICT JUDGE